Jordan **DONTOS** and Jennifer **Dontos**, Appellant,

v.

Mark **BRUNO**, Appellee.

No. 05–10–00178–CV.

Court of Appeals of Texas, Dallas.

April 14, 2011.

Rehearing Overruled May 24, 2011.

Gary E. Smith, Graham, Bright & Smith, P.C., Dallas, TX, for Appellant.

Peter T. Martin, Martin & Martin Law, P.C., Dallas, TX, for Appellee.

Before Justices MOSELEY, MARTIN RICHTER, and LANG–MIERS.

## OPINION

Opinion By Justice MARTIN RICHTER.

Jordan and Jennifer Dontos (together, "Dontos") appeal the trial court's order of dismissal for want of personal jurisdiction in favor of Mark Bruno. In a single issue, Dontos asserts the trial court erred in dismissing the case against Bruno because Bruno's contacts with the State of Texas were sufficient to establish personal jurisdiction. Concluding Dontos' argument is without merit, we affirm the trial court's order.

### BACKGROUND

On March 27, 2007, Dontos entered into a franchise agreement (the "Agreement") with 24/seven Vending USA Limited, New Zealand (the "Company") for the purpose of reserving vending routes and using the 24/seven brand name. Pursuant to the Agreement, Dontos was required to deposit purchase money funds with the Company. To this end, Dontos obtained a $333,000 loan from Banco Popular (the "Bank"), a bank recommended by the Company. Bruno, a resident of Connecticut, was not a party to the Agreement and has never been employed by either the Company or the Bank.

"24/seven" is a brand name in the vending industry. Licenses for the brand name were issued by the Company. Bacon Whitney Corporation ("BWC") also used the brand name 24/seven under a license. In August 2007, Bruno became president of BWC and BWC purchased certain specific franchises from Service America Group. The Dontos franchise was not included in this asset purchase. Apparently the Company encountered financial difficulty, and by November 2007 had ceased to support its franchises in the Dallas area. Because BWC shared the 24/seven brand name, the Company's failure to support its franchises had the potential to negatively affect BWC's business. Therefore, BWC wanted to evaluate the franchises in Texas. Consequently, in November 2007, Bruno traveled to Dallas, Texas to meet with BWC franchisees and other area franchisees that were operating under the 24/seven brand name. Dontos attended the meeting as a 24/seven franchisee. Bruno met with Dontos to discuss the potential purchase of her franchise. Bruno was also evaluating the potential purchase of other franchises held by the Company or VTL Group Limited, a New Zealand Company that is the parent, sister company, or affiliate of the Company ("VTL"). At that time, Bruno explained to Dontos that her franchise was owned by VTL, not BWC. Dontos told Bruno that she had issues with her routes and planned to sue the Company and VTL. After the meeting, Dontos sent an email to Bruno inquiring about certain vending routes, and Bruno sent Dontos a response. Bruno decided that BWC should not purchase any of the Company's or VTL's franchises until the potential litigation was resolved.

One month later, Dontos initiated this lawsuit against Bruno, the Company, VTL, the Bank, BWC, and others. In essence, Dontos claims she was defrauded under the Agreement because the Company failed to deliver certain routes as required under the Agreement. The petition states that Bruno:

> ... was an officer, director, agent or employer of several of the corporate defendants ... in the so called "VTL Group" and is currently president of [BWC] and a principal spokesman and actor in the shell game which is the gravamen of this suit ... He participated in the torts alleged herein by personal visits and email in the State of Texas.

The specifics of the tort claim alleged against Bruno are unclear, but Dontos generally claims that Bruno induced her to

continue with the Agreement. Bruno specially appeared and objected to the court's exercise of personal jurisdiction over him. Following a hearing,[1] the court granted Bruno's special appearance and signed an order dismissing the claims against him. Dontos' subsequent request for findings of fact and conclusions of law was overruled by operation of law. This appeal followed.

## DISCUSSION

In her sole issue, Dontos asserts the trial court erred in granting the special appearance because Bruno has sufficient "minimal specific contacts" with the State of Texas to establish personal jurisdiction over him. The existence of personal jurisdiction is a question of law which we review de novo. *Spir Star AG v. Kimich*, 310 S.W.3d 868, 871 (Tex.2010). In our review, we consider all of the jurisdictional evidence before the trial court, and if it issued no findings of fact, we presume the trial court resolved all factual disputes in favor of its ruling if such a finding is supported by the record. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex.2002).

A plaintiff bears the initial burden of pleading sufficient allegations to establish personal jurisdiction over a defendant. *Id.* at 793. However, when a nonresident defendant challenges jurisdiction through a special appearance, the defendant must negate all grounds for personal jurisdiction alleged by the plaintiff in order to prevail. *See id.*

A Texas court's exercise of personal jurisdiction over a nonresident satisfies state statutory and federal due-process requirements if the nonresident has minimum contacts with Texas and the exercise of personal jurisdiction over the nonresident does not offend traditional notions of fair play and substantial justice. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). The minimum-contacts requirement is satisfied when the nonresident purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex.2007). The "purposeful availment" inquiry has three parts. *Id.* First, only the defendant's contacts with the forum are relevant, so the reviewing court does not consider the unilateral activity of other persons or entities. *Id.* Second, the contacts on which jurisdiction depends must be purposeful, rather than random, fortuitous, or attenuated. *Id.* Third, "the defendant must seek some benefit, advantage or profit by availing itself of the jurisdiction." *Id.* (quoting *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex.2005)).

A nonresident's contacts with the forum state may give rise to general or specific jurisdiction. *Id.* General jurisdiction is established if the nonresident's contacts with the forum state were continuous and systematic within a reasonable number of years before suit was filed. *PHC–Minden, L.P. v. Kimberly–Clark Corp.*, 235 S.W.3d 163, 168–71 (Tex.2007). Specific jurisdiction is established if the nonresident's alleged liability arises out of or is related to an activity conducted within the forum. *Moki Mac*, 221 S.W.3d at 575–76. Liability arises out of or is related to an activity within the state when there is a substantial connection between the nonresident's contacts with the state and the operative facts of the litigation. *Id.* at 576,

---

1. The transcript of the hearing is not part of the record before us. Dontos states that the entire factual record was developed by affidavits filed with the clerk. These affidavits are part of our record and form the basis for our review.

585. Here, Dontos has only challenged the trial court's ruling with regard to specific jurisdiction. Our inquiry is limited accordingly.

After considering the pleadings and the evidence, we conclude the jurisdictional allegations do not individually or collectively support the exercise of personal jurisdiction over Bruno. Dontos asserts Bruno engaged in fraud because he induced her to continue with the Agreement. Specifically, she claims that because of statements Bruno made and "caused to be made" during the meeting in Texas and in his subsequent email, Dontos did not pursue her right of rescission, but rather "went forward with the vending machine franchise." According to Dontos "this" constitutes fraud. But Dontos fails to establish any substantive connection between Bruno's contacts with Texas and the operative facts of the litigation. The uncontroverted evidence establishes that neither Bruno nor BWC were parties to the Agreement or played any role in inducing Dontos to enter into the Agreement or buy routes or franchises from the Company. Neither Bruno nor BWC were parties to or had any knowledge of Dontos' transaction, nor did they play any role in any company with an interest in or knowledge of the transaction. BWC and Bruno were not involved in the bank loan and did not receive any proceeds from the loan, either directly or indirectly. Bruno has never been an employee, officer, or director of the Company, VTL, or the Bank, and BWC is not a successor company or affiliate of VTL or the Company. Neither BWC nor Bruno ever owned or sold Dontos' franchise or routes. We presume the trial court resolved all factual disputes in favor of its ruling. *See BMC Software*, 83 S.W.3d at 795. On this record, we conclude the trial court did not err in sustaining the special appearance. Dontos' issue is overruled and the trial court's order is affirmed.