**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 12-10986

United States Court of Appeals
Fifth Circuit

**FILED**
September 16, 2014

Lyle W. Cayce
Clerk

JORDAN DONTOS; JENNIFER DONTOS; CRAVE, L.L.C.,

Plaintiffs-Appellants

v.

VENDOMATION NZ LIMITED; VENDOMATION, L.L.C.; VENDOMATION
SECURITIES LIMITED; JOHN HALPERN; GEORGE PARKMAN DENNY,
III,

Defendants-Appellees

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:11-CV-553

Before SMITH, DENNIS, and HIGGINSON, Circuit Judges.

PER CURIAM:*

Plaintiffs-Appellants Jordan and Jennifer Dontos are residents of Texas
and co-owners of Crave, L.L.C., a Texas company.  Plaintiffs filed suit in the
Northern District of Texas against two citizens of Massachusetts, John
Halpern and George Parkman Denny, and three corporations—Vendomation
NZ Limited, Vendomation, L.L.C., and Vendomation Securities Limited,
[hereinafter, collectively referred to as "the Vendomation Defendants"]—

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 12-10986

alleging state law claims of fraudulent asset transfer, fraud, negligent misrepresentation, civil conspiracy, and aiding and abetting, and asserting federal jurisdiction based on the diversity of citizenship of the parties, pursuant to 28 U.S.C. § 1332.[1] Plaintiffs contend that Defendants fraudulently induced them into a franchise agreement to service vending machines on unprofitable routes, made misrepresentations upon which Plaintiffs detrimentally relied, fraudulently transferred assets to avoid payment of Plaintiffs' Texas state court judgment against them, and failed to inform the Plaintiffs of the franchiser's bankruptcy. The district court, after denying Plaintiffs' motion for jurisdictional discovery, granted Defendants' motion to dismiss for lack of personal jurisdiction, finding that Plaintiffs failed to establish a *prima facie* case for personal jurisdiction over any of the Defendants.

For the reasons that follow, we conclude that the district court erred in granting Defendants' motions to dismiss for lack of personal jurisdiction because, accepting Plaintiffs' allegations as true, Plaintiffs established a *prima facie* case of specific personal jurisdiction over Defendants Halpern, Denny and the Vendomation Defendants with regard to the Plaintiffs' fraudulent asset transfer claim.

**I.**

Plaintiffs allege that Defendants Halpern and Denny were part-owners and board members of "All Seasons," a vending services company. All Seasons, in order to engage in a franchising model, formed 24Seven USA Franchising, Limited ("24 Seven"), a Delaware Corporation, which is affiliated with various

---

[1] Erica Hannam, the manager of all of the Vendomation corporations involved, submitted affidavits indicating that Vendomation, NZ Limited and Vendomation Securities Limited are both New Zealand registered companies and that Vendomation, L.L.C., is incorporated in Massachusetts. Accordingly, the Vendomation Defendants have complete diversity of citizenship from the Plaintiffs.

sister or partner franchising companies in New Zealand that Plaintiffs collectively refer to as the "VTL Group." Plaintiffs assert that Defendants Halpern and Denny "were involved in the negotiation and deal with" the VTL Group companies to develop vending machine servicing franchises. As part of this effort to obtain franchise agreements, 24Seven distributed a Uniform Franchise Offering Circular ("UFOC"), listing Halpern and Denny as principals. On March 29, 2007, in response to the UFOC, Plaintiffs Jennifer and Jordan Dontos entered into a franchise agreement with 24Seven.

Plaintiffs provided 24Seven with $175,000 for the rights to service two vending machine routes in Texas. Plaintiffs were informed that these specific routes generated a weekly gross sale of almost $7,000. Relying on this information, Plaintiffs moved their home from Seattle, Washington, to Carrolton, Texas, quit their jobs in Washington, and borrowed over $300,000 to pay additional franchise fees. Plaintiffs assert that 24Seven never tendered access to the routes promised, despite its representations, and instead attempted to convince the Plaintiffs to accept less profitable routes.

Plaintiffs allege that because of the VTL Group's financial difficulties, Halpern and Denny formed Bacon Whitney, LLC ("Bacon Whitney") for the purpose of transferring the majority of VTL's assets to Bacon Whitney, with the remainder placed in a trust for All Seasons. Bacon Whitney, by receiving the VTL Group's assets, thereby "assumed control" over Plaintiffs' money, vending service routes, and franchise agreement with 24Seven.[2] Plaintiffs allege that two officials of Bacon Whitney, Brad Camac and Mark Bruno,

---

[2] Defendants Halpern and Denny dispute that Bacon Whitney or any of their affiliates ever acquired the Plaintiffs' franchise fee or franchise agreement. As discussed *infra*, for purposes of this appeal, we must accept all of Plaintiffs' allegations as true and resolve all factual disputes in their favor. Accordingly, we will assume Bacon Whitney did assume control over Plaintiffs' money and contract with 24Seven, as Plaintiffs assert in their complaint.

informed Plaintiffs of this transfer and assured them that Bacon Whitney was financially sound, invoking the good names and reputations of Halpern and Denny, and assuring Plaintiffs that they would be accepted as a franchisee of Bacon Whitney.  However, Plaintiffs were never accepted as a franchisee of Bacon Whitney.

Plaintiffs then filed suit in Texas state court alleging, *inter alia*, state law claims of fraud, breach of the franchise agreement, and interference with contractual and business relationships.  Plaintiffs filed suit against ten defendants, including 24Seven, VTL Group, and Bacon Whitney, as well as Mark Bruno, the Vice President of Bacon Whitney, and Brad Camac, a salesman for 24Seven, who allegedly made the fraudulent misrepresentations to the Plaintiffs about the vending machine routes.  Bruno was dismissed as a Defendant because the Texas Court of Appeals found that Texas courts lacked personal jurisdiction over him.  *Dontos v. Bruno,* 339 S.W.3d 777 (Tex. App. - Dallas 2011, no pet.).  A different panel of the Texas Court of Appeals thereafter denied Camac's motion to dismiss for lack of personal jurisdiction, concluding that he was subject to suit in Texas for his allegedly fraudulent acts committed while employed by 24Seven.  *Camac v. Dontos*, 390 S.W.3d 398 (Tex. App. - Dallas 2012).  Plaintiffs assert that, as a result of this litigation, they were awarded a $6,000,000 judgment against the VTL Group and Bacon Whitney.  Thereafter, in January of 2009, Plaintiffs were contacted by two Vendomation officials—Lisle McErlane, an attorney, and Erica Hannam, a manager of the Vendomation Defendants—who offered to settle the dispute between Plaintiffs and the VTL Group for a lump sum payment of $500,000.  Plaintiffs accepted this offer on January 26, 2009, but never received the promised lump sum.

At the time of the state court judgment, Bacon Whitney had entered receivership in Massachusetts and was purchased by a corporation named Intellivend, in exchange for a $1,250,000 note. Plaintiffs allege that the Bacon Whitney receiver then assigned this note to Halpern and Denny, without sufficient compensation. In October 2009, the Vendomation Defendants obtained this note from Intellivend, becoming one of its largest creditors. In 2010, Intellivend entered bankruptcy proceedings. The Vendomation Defendants do not dispute that, as of December 2010, Vendomation Securities Limited owned five franchise agreements in Texas as a result of receiving a $1.25 million note from Intellivend, which Intellivend later defaulted on.

Thereafter, in December 2010, and again in March 2011, McErlane contacted Plaintiffs via e-mail and arranged for a meeting with all holders of Intellivend franchise agreements (including Plaintiffs) to explain that the Vendomation Defendants now owned their franchise agreements. At this meeting, McErlane represented himself as an attorney, investor, employee, and partner for Vendomation. McErlane presented the franchisees with a document to sign, officially transferring their franchise agreements to Vendomation. McErlane allegedly suggested at this meeting that the franchisees would suffer "dire and adverse consequences" if they refused to sign the document.

In March 2011, Plaintiffs filed a complaint in the Northern District of Texas against Defendants Halpern, Denny, and the Vendomation Defendants, asserting Texas state law claims of fraudulent asset transfer, fraud, negligent misrepresentation, civil conspiracy, and aiding and abetting. Defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), alleging that the district court lacked personal jurisdiction over Defendants, and in the alternative, moved to dismiss under Federal Rule of Civil Procedure 12(b)(6),

for failure to state a cause of action, and under Federal Rule of Civil Procedure 9(b), for failure to plead a claim of fraud with particularity.

The district court granted Defendants' motion to dismiss on personal jurisdiction grounds only, and denied Plaintiffs' motion for jurisdictional discovery.  Plaintiffs timely appealed, arguing that the court erred in granting Defendants' Rule 12(b)(2) motion for lack of personal jurisdiction and abused its discretion in denying Plaintiffs' motion for discovery. [3]  For the following reasons, we REVERSE and REMAND.

## II.

A district court's motion to dismiss for lack of personal jurisdiction over a non-resident defendant is reviewed *de novo.  Adams v. Unione Mediterranea Di Sicurta*, 220 F.3d 659, 667 (5th Cir. 2000).  If a party raises the defense of lack of personal jurisdiction, the non-moving party bears the burden of proving personal jurisdiction.  *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).  Although the non-moving party bears the burden, "[w]hen a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in the present case . . . the nonmoving party need only make a prima facie showing, and the court must accept as true the nonmover's allegations and resolve all factual disputes in its favor."  *Guidry v. U.S. Tobacco Co., Inc.,* 188 F.3d 619, 625 (5th Cir. 1999); *see also Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 869 (5th Cir. 2000) (explaining that we "accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts.").

A court sitting in diversity "may exercise personal jurisdiction only to the extent permitted a state court under applicable state law."  *Allred v. Moore &*

---

[3] Because we reverse the district court's dismissal for lack of personal jurisdiction, Plaintiffs' arguments regarding the denial of their motion for jurisdictional discovery is moot.

*Peterson*, 117 F.3d 278, 281 (5th Cir. 1997).  Further, a federal court may only exercise personal jurisdiction over a nonresident defendant if "the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment."  *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009).  Due process is satisfied if the "nonresident defendant has certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 595 (5th Cir. 1999) (alteration in original) (*quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  "The 'minimum contacts' inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it 'reasonably anticipates being haled into court.'"  *McFadin*, 587 F.3d at 759 (internal citation omitted).

A district court may assert either general or specific jurisdiction over a party.  *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867-68 (5th Cir. 2001).  General jurisdiction is established where the defendant has "continuous and systematic" contacts with the forum state.  *Choice Healthcare, Inc. v. Kaiser Foundation Health Plan of Colo.*, 615 F.3d 364, 368 (5th Cir. 2010).  Specific jurisdiction may be established where the defendant lacks "continuous and systematic contacts" but has instead some minimum contacts that establish (1) the defendant has "purposefully directed his activities at residents of the forum," and (2) that the plaintiff's alleged injury "arise[s] out of or relate[s]" to the defendant's contacts with the forum state.  *Clemens v. McNamee,* 615 F.3d 374, 378-79 (5th Cir. 2010) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985)).  Stated differently, there must be a sufficient nexus between the defendant's minimum contacts and the plaintiff's alleged injury.  *Id.* at 379.  Accordingly, "[w]hen a nonresident

defendant commits a tort within the state, or an act outside the state that causes tortious injury within the state, that tortious conduct amounts to sufficient minimum contacts with the state by the defendant to constitutionally permit courts within that state, including federal courts, to exercise personal adjudicative jurisdiction over the tortfeasor and the causes of actions arising from its offenses or quasi-offenses." *Guidry*, 188 F.3d at 628.

If a plaintiff establishes minimum contacts between the defendant and the forum state, the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable. *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 384 (5th Cir. 2003). "To show that an exercise of jurisdiction is unreasonable once minimum contacts are established, the defendant must make a 'compelling case' against it." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). "It is rare to say the assertion is unfair after minimum contacts have been shown." *Id.* To determine whether jurisdiction is unfair and unreasonable, a court may consider, when relevant, "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *McFadin*, 587 F.3d at 759-60.

### III.

Specific jurisdiction is a "claim-specific inquiry[.]" *See Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006). "A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim." *Id.* In the district court, Plaintiffs alleged state law claims of fraudulent asset transfer,

fraud, negligent misrepresentation, civil conspiracy, and aiding and abetting. On appeal, however, Plaintiffs have failed to adequately brief the district court's conclusions that it lacked jurisdiction over the Defendants as to the Plaintiffs' state law claims of fraud, negligent misinterpretation, civil conspiracy and aiding and abetting. Any argument the Plaintiffs could have raised that the Defendants were subject to specific jurisdiction for these claims are therefore abandoned. *Yohey v. Collins*, 985 F.2d 222, 224–25 (5th Cir. 1993) ("Yohey has abandoned these arguments by failing to argue them in the body of his brief."). Accordingly, we will only consider whether the Plaintiffs have established a *prima facie* case of specific personal jurisdiction regarding the fraudulent asset transfer claim, which was adequately briefed on appeal.

Based on the foregoing reasons, we conclude that Plaintiffs have established a *prima facie* case of specific[4] personal jurisdiction over Defendants Halpern and Denny and the Vendomation Defendants as to the fraudulent asset transfer claim.

**A. Fraudulent Asset Transfer**

The Plaintiffs allege that the Defendants are all liable under Section 24.005(a) of the Texas Uniform Fraudulent Transfer Act ("TUFTA") for their participation as subsequent transferees in the fraudulent asset transfer of the VTL Group's and Bacon Whitney's assets to prevent satisfaction of the Plaintiffs' Texas state court judgment against the VTL Group and Bacon Whitney.

To establish a claim under TUFTA, a plaintiff must prove that (1) she is a "creditor" with a claim against a "debtor"; (2) the debtor transferred assets

---

[4] Plaintiffs have not established a *prima facie* case that any of the Defendants are subject to general jurisdiction. Halpern and Denny are residents of Massachusetts, and Plaintiffs did not allege any facts that, if true, would establish that the Vendomation Defendants, as foreign corporations, were "at home" in the state of Texas. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2854 (2011).

after, or a short time before, the plaintiff's claim arose; and (3) the debtor made the transfer with the intent to hinder, delay, or defraud the plaintiff. *Nwokedi v. Unlimited Restoration Specialistis, Inc.*, 428 S.W.3d 191, 203-05 (Tex. App. – Houston 1st Dist. 2013, pet. Denied). We have recently explained that

> In general, a determination of liability under TUFTA is a two-step process: first, a finding that a debtor committed an actual, fraudulent transfer, TUFTA § 24.005(a)(1), or a constructive, fraudulent transfer, *id*. § 24.005(a)(2); and, second, recovery of that fraudulent transfer, or its value, from the transferees, id. §§ 24.008–24.009.

*Spring Street Partners-IV, L.P. v. Lam*, 730 F.3d 427, 436 (5th Cir. 2013). With regard to the debtor's intent, actual fraud requires an "actual intent to hinder, delay, or defraud any creditor of the debtor," whereas constructive fraud is established by demonstrating that a debtor made the transfer or incurred an obligation "without receiving a reasonably equivalent value in exchange for the transfer or obligation," and either (1) "was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small," or (2) "intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due." *Id.* at 437 (quoting Tex. Bus. & Com. Code § 24.005(a)(2)).

TUFTA defines a creditor as someone who has a "claim"—that is, a "right to payment or property, whether or not the right is reduced to judgment, liquidated, . . . fixed, contingent, matured . . . disputed, undisputed, legal, equitable, [or] secured." *In re Galaz*, 13-50781, 2014 WL 4197213 (5th Cir. Aug. 25, 2014) (quoting Tex. Bus. & Com. Code §§ 24.002(3), (4)). A plaintiff's status as a creditor thus "turns on whether 'she had a right to payment or property that existed at the time of the fraudulent transfer[ ] or that arose within a reasonable time afterwards.'" *Id.* (citing *Williams v. Performance*

*Diesel, Inc.*, No. 14-00-00063-CV, 2002 WL 596414 at *2 (Tex. App. – Houston Apr. 18, 2002, no pet.). A "debtor" is defined as "a person who is liable on a claim[.]" *Id.* (quoting Tex. Bus. & Com. Code § 4.002(6)).

The statute provides a good faith defense for subsequent transferees who accept the fraudulent transfer "in good faith and for a reasonably equivalent value." *Spring Street Partners-IV, L.P.*, 730 F.3d at 438 (quoting Tex. Bus. & Com. Code § 24.009(a)).   Thus, as Plaintiffs note on appeal, if the *debtor* has actual or constructive fraudulent intent, then any "subsequent transferee of the asset" is liable under TUFTA, unless the transferee took the assets "in good faith and for a reasonably equivalent value." *Id.*  A "reasonably equivalent value" is defined under TUFTA as "within the range of values for which the transferor would have sold the assets in an arm's length transaction." *Id.* at 437 (quoting Tex. Bus. & Com. Code § 24.004(d)).

As noted *supra*, a tortious act committed outside the forum state that has consequences or effects within the forum will establish minimum contacts if the tortious conduct is purposefully or expressly aimed at the forum state. *See Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 400 (5th Cir. 2009) (citing *Calder v. Jones*, 465 U.S. 783, 789-90 (1984)).  While this court is hesitant to make *per se* rules regarding the fact-specific minimum contacts analysis, a debtor who is liable under TUFTA to a Texas resident is likely subject to suit in the creditor's forum state because the debtor acted with actual or constructive fraudulent intent to expressly aim their conduct at a creditor in the forum, where the tort's harm was felt. *Id.*  However, a subsequent transferee's liability under TUFTA alone may be insufficient to establish minimum contacts with the creditor's forum state. *Id.* 400-401 ("Knowingly accepting a fraudulent transfer may subject a transferee to liability, but such conduct is not necessarily tantamount to committing a wrongful act

purposefully aimed at a creditor of the transferor *in his state of residence.*"). For example, an individual or corporation who is a mere "passive transferee," is unlikely to be subject to jurisdiction in the creditor's resident state. *Id.* at 401. However, if the transferee "precipitate[s] and direct[s] an alleged fraudulent transfer at the expense of a known, . . . creditor in Texas whose right to payment arises out of contracts that share a strong connection with Texas," then the transferee is subject to suit in Texas court. *Id.* at 402.

## B. Minimum Contacts

The district court found that Plaintiffs failed to establish that any of the Defendants had sufficient minimum contacts relating to the Plaintiffs' TUFTA claim. With regard to the Vendomation Defendants, the district court reasoned that the "record calls into question whether the fraudulent transfer claim could have even involved the Vendomation Defendants." The district court concluded that the alleged conduct amounting to a fraudulent transfer began in January of 2009, with McErlane's misrepresentations that VTL Group was willing to provide Plaintiffs $500,000 to settle their differences. Therefore, the court reasoned, Vendomation could not feasibly have participated in this conduct, as it did not exist at the time the fraudulent transfer *began*. In so finding, the district court did not address the Vendomation Defendants' alleged participation in the fraudulent transfer as a *subsequent* transferee of the VTL Group's assets. The district court, by disregarding these factual allegations, erroneously failed to "accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts." *Stripling*, 234 F.3d at 869.

With regard to Defendants Halpern and Denny, the district court reasoned that because Plaintiffs failed to provide "any *evidence* of contacts Defendant Halpern and Denny themselves had with Texas" that would give

rise to a fraudulent transfer claim, the Plaintiffs failed to meet their burden of establishing the proper exercise of personal jurisdiction over Denny and Halpern. As noted, however, Plaintiffs were not required to put forth any *evidence* of contacts the Defendants had with the forum state, but only to demonstrate a *prima facie* case. *See Guidry*, 188 F.3d at 625. Moreover, just as with its analysis regarding the Vendomation Defendants, the district court disregarded Plaintiffs' allegations that Denny and Halpern were knowing, subsequent transferees to a fraudulent asset transfer.

Viewing the record in the light most favorable to Plaintiffs, as we must, we conclude that the Plaintiffs have established a *prima facie* case that Defendants Halpern and Denny as well as the Vendomation Defendants are subject to suit in Texas district court on Plaintiffs' alleged TUFTA claims.

As detailed *supra*, Plaintiffs allege that Halpern and Denny served as board members of All Seasons (which formed 24Seven as part of its franchising venture), that they were involved with negotiations with the VTL Group, and that they co-owned and formed Bacon Whitney, a company they created with the purpose of fraudulently transferring the VTL Group's assets—which included Plaintiffs' franchise fee and Texas-based franchise agreement—before the VTL Group entered receivership, so that the VTL Group could avoid payment to its creditors. Plaintiffs also contend that Defendants Halpern and Denny, as assignees of the $1.25 million note that they received from Bacon Whitney without sufficient consideration, received a fraudulent asset transfer, and used the note to form the Vendomation corporations, which ultimately acquired Plaintiffs' franchise fee and franchise agreement, and now owns five Texas-based franchise agreements. Plaintiffs allege that Halpern and Denny were board members and managing directors of Bacon Whitney and all of the "franchise businesses throughout their various iterations" and therefore

knowingly directed the operations and fraudulent conduct of each.   The Plaintiffs' complaint additionally states that

> the assets of Bacon Whitney [which include Plaintiffs' franchise fee and franchise agreement] have been sold and/or transferred to Halpern and Denny and Vendomation . . . . for less than equivalent value thus rendering the VTL Group and Bacon Whitney insolvent and unable to pay its creditors.  This was done, in bad faith for the purpose of defrauding creditors and hindering or delaying collection of their debts, including Plaintiffs who's [*sic*] debt is evidenced by Judgment for activities which took place in Texas by a Texas court.

Plaintiffs complaint further states that "Vendomation had acquired their franchise agreements and vending route assets" and that Vendomation was "formed to carry on the business of operating the franchises that had passed down from the VTL Group, through Bacon Whitney and Intellivend."

Preliminarily, Plaintiffs' factual allegations, taken as true, sufficiently establish the Plaintiffs as "creditors" under TUFTA, because they have a right to payment of the unsatisfied judgment against the VTL Group and Bacon Whitney—a Texas state court judgment that was entered in their favor a reasonable time after the allegedly fraudulent transfer of VTL's assets to Bacon Whitney.  *In re Galaz*, 2014 WL 4197213, at *5.  Likewise, Plaintiffs' factual allegations establish that Bacon Whitney and the VTL Group are "debtors" under TUFTA because, pursuant to the Texas state court judgment, they are each liable to the Plaintiffs on a claim.  *Id.*  Plaintiffs allege that Bacon Whitney was formed by Halpern and Denny with the purpose of fraudulently transferring the VTL Group's assets before it went into receivership. Accordingly, Plaintiffs have also sufficiently pleaded that the VTL Group and Bacon Whitney acted with actual fraudulent intent.  *Spring Street Partners-IV, L.P.*, 730 F.3d at 438.

Plaintiffs further allege that the Vendomation Defendants and Halpern and Denny are each transferees of the fraudulent asset transfers that prevented satisfaction of Plaintiffs' six million dollar Texas state court judgment against the VTL Group and Bacon Whitney. As discussed *supra*, to render the Defendants liable under TUFTA, Plaintiffs must allege only that the Defendants accepted the fraudulently transferred assets, in the absence of good faith. But to allege a *prima facie* case of specific personal jurisdiction based on TUFTA liability, the Plaintiffs must allege more than mere passive acceptance of a fraudulent asset transfer that harmed a creditor in the forum state; they must also allege some purposeful conduct directed at a creditor in the forum state. *Mullins*, 564 F.3d at 400.

With regard to the Vendomation Defendants, Plaintiffs allege that Vendomation acquired its assets, money, and franchise agreements from Intellivend, that had acquired Bacon Whitney's assets, which had received the VTL Group's assets, which included the Plaintiffs' contract for two vending machine routes in Texas. Plaintiffs assert that each of these fraudulent transfers was orchestrated to render the preceding corporation insolvent and unable to pay its creditors. Specifically, Plaintiffs allege that Vendomation was formed for the very purpose of continuing the franchising business of the now bankrupt VTL Group and Bacon Whitney and that, consequently, Vendomation now owns and operates five Texas-based franchises. Taking these facts as true, Vendomation has minimum contacts with Texas—its five franchise agreements in Texas—and the Plaintiffs' TUFTA claim is closely related to these minimum contacts. The Vendomation Defendants, by knowingly accepting Texas franchise agreements from the bankrupt debtor, "purposefully directed" their business activity at Texas, and such conduct contributed to Plaintiffs' alleged injury caused by Vendomation's violation of

TUFTA. *Mullins,* 564 F.3d at 402 (finding specific personal jurisdiction over a non-resident subsequent transferee who knowingly "thwarted" a Texas creditor's right to payment by acquiring a note and purchase agreement, both of which were governed under Texas law, from the debtor "ensuring that a portion of its own notes would be paid while knowing that [the Texas creditor's] would not"). The Texas-based franchise agreements that the Vendomation Defendants ultimately acquired are sufficient minimum contacts to form the basis of specific personal jurisdiction because they are part of the very assets that were allegedly fraudulently transferred, and thus "[p]roof that these assets were [fraudulently] transferred and an assessment of their value will be essential to the [T]UFTA analysis." *Retamco Operating, Inc.*, 278 S.W.3d at 341. Accordingly, Plaintiffs have sufficiently alleged that the Vendomation Defendants have minimum contacts with Texas which have a sufficient nexus to their TUFTA claim.

With regard to Defendants Halpern and Denny, Plaintiffs' allegations, taken as true, establish that Denny and Halpern are liable under TUFTA as the first transferee of the VTL Group's assets, knowingly accepting the VTL Group's assets so that it could avoid payment to its creditors. Plaintiffs additionally allege that Defendants Halpern and Denny also acted as subsequent transferees by accepting a $1.25 million note without providing sufficient compensation in return, in order to bankrupt Bacon Whitney and avoid payment to its creditors, including the Plaintiffs. Plaintiffs claims all center around Halpern and Denny's efforts to purposefully avoid payment of their six million dollar judgment to the Plaintiffs. As noted, the Texas franchise agreements and Plaintiffs' franchise fee were part of the actual assets that were allegedly fraudulently transferred. As the Texas Supreme Court has explained, when a nonresident defendant receives Texas property or

a Texas contract, for the purpose of defrauding a Texas resident, the non-resident defendant is subject to suit in Texas courts. *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 341 (Tex. 2009). Halpern and Denny's "alleged conduct in engineering a transfer that knowingly impaired the rights of a Texas resident under agreements centered in Texas substantiates that [they] purposefully aimed [their] intentionally tortious conduct at the forum state." *Mullins*, 564 F.3d at 403. Accordingly, Plaintiffs' pleadings sufficiently establish that their TUFTA claims arise from Defendants' minimum contacts with Texas.

### C. Due Process Considerations

Once minimum contacts are established that have a sufficient nexus to the Plaintiffs' claims, the burden then shifts to the Defendants to establish that hailing Defendants into court in Texas would offend the notions of due process. *McFadin*, 587 F.3d at 759-60. The Defendants have not made a "compelling case" that the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. *Wien Air Alaska, Inc.*, 195 F.3d at 215. Here, the forum state has a significant interest in protecting its citizens from the fraud that Plaintiffs allege Halpern and Denny and the Vendomation Defendants committed that caused their financial hardship. *Id.* ("If a cause of action for fraud committed against a resident of the forum is directly related to the tortious activities that give rise to personal jurisdiction, an exercise of jurisdiction likely comports with the due process clause, given the obvious interests of the plaintiff and the forum state."). Additionally, the Plaintiffs have a sufficient interest in securing relief, as they allege significant financial damages, including an unsatisfied $6,000,000 judgment. Further, if the allegations are true, then the Defendants, who have benefitted from receipt of five franchise agreements in Texas, can reasonably expect to be haled into a

Texas court. *Luv N' care, Ltd.*, 438 F.3d at 470 (explaining defendants who purposefully engage in business within the forum state "knowingly benefit[] from the availability of a particular state's market" and thus may reasonably foresee that claims will arise from their business transactions, and may be subjected to suit in the forum state). The district court's exercise of personal jurisdiction over the Defendants would therefore not offend due process.

Lastly, we note that our opinion today that the Plaintiffs have established a *prima facie* case of specific personal jurisdiction, does not "foreclose [any] defendant from holding [the Plaintiffs] to its ultimate burden at trial of establishing contested jurisdictional facts by a preponderance of the evidence." *Mullins*, 564 F.3d at 399.

## CONCLUSION

Because Plaintiffs have sufficiently pleaded facts that establish the Defendants' minimum contacts with Texas, and Plaintiffs' fraudulent asset transfer claim arises directly out of those minimum contacts, we REVERSE the district court's judgment dismissing the complaint for lack of jurisdiction and REMAND the case to it for further proceedings consistent with this opinion.