# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 23, 2009

Charles R. Fulbruge III
Clerk

No. 09-10349
Summary Calendar

PRIME INCOME ASSET MANAGEMENT INC,

Plaintiff - Appellant

v.

ONE DALLAS CENTRE ASSOCIATES LP,

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
3:07-CV-1731

Before GARZA, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:[*]

After failing to consummate a commercial real estate transaction, Prime Income Asset Management, Inc. (Prime) sued One Dallas Centre Associates, L.P. (ODCA) seeking to recover $750,000 in earnest money. Prime asserted various contract and fraud claims. ODCA moved for summary judgment on all claims, which the district court granted. Prime appeals.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Prime and ODCA entered a Purchase and Sale Agreement (the Agreement) for a commercial building in Dallas, Texas. As part of the Agreement, Prime deposited $750,000 in earnest money in an escrow account. The parties realized they would be unable to close the sale by the initial closing date. Thereafter, they executed four amendments to the Agreement, each time agreeing to extend the closing date and/or the deadline by which Prime was required to make an additional extension deposit of $1,000,000. As part of the second such amendment, Prime expressly and irrevocably directed the release of the initial $750,000 deposit to ODCA. Ultimately, Prime failed to pay the additional extension deposit. ODCA terminated the Agreement and retained the $750,000 that Prime had released as part of the second amendment. Prime then filed the instant suit seeking to recoup the $750,000 based on, inter alia, breach of contract, misrepresentation, and money had and received theories. ODCA filed a motion for summary judgment on all of Prime's claims. The district court granted ODCA's motion and entered judgment against Prime on all its claims for relief.[1]

We review the district court's grant of summary judgment *de novo*. *Ackermann v. Wyeth Pharmaceuticals*, 526 F.3d 203, 207 (5th Cir. 2008). Summary judgment is proper if the movant demonstrates the absence of genuine issues of material fact and its entitlement to judgment as a matter of law. *Thurman v. Sears, Roebuck & Co.*, 952 F.2d 128, 131 (5th Cir. 1992). Because jurisdiction is premised upon diversity and the Agreement involved property located in Dallas, Texas, we apply Texas substantive law. *See Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners, Inc.*, 334 F.3d 423, 427 (5th Cir. 2003).

---

[1] The district court initially refused to grant summary judgment on the contract claim because there was a factual dispute as to who had breached the contract. After ODCA filed a supplement to its motion for summary judgment, the court determined that Prime had failed to allege damages and granted summary judgment on the contract claim.

Under Texas law, a court interpreting a contract seeks to discern the true intent of the parties as stated in the contract. *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). "When there is no ambiguity, it is the court's duty to give the words used their plain meaning." *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984). The second amendment to the Agreement contains the critical language:

> In consideration for the Agreement by [OCDA] to extend the Date of Closing, (I) [Prime] hereby expressly and irrevocably directs the Title Company to release and pay the [$750,000] Initial Deposit to [OCDA] . . . . [T]he Initial Deposit . . . shall be non-refundable to [Prime] but shall be applicable to the Purchase Price at closing . . . .

The trial court determined that the terms of the Agreement were unambiguous with regard to the refundability of the initial deposit. We agree. As an initial matter, the express terms of the amendment provide that the initial deposit "*shall be non-refundable.*" Further, the second amendment's unambiguous terms provide that, in consideration for an extension of the closing date, Prime "*expressly and irrevocably* directs the title company to release" the initial deposit to ODCA. Black's Dictionary defines "express" as "[c]learly and unmistakably communicated," and "irrevocable" as "[u]nalterable [or] committed beyond recall[.]" BLACK'S LAW DICTIONARY (8th ed. 2004). Interpretation of the language at issue leads to only one reasonable conclusion: in order to extend the closing date, Prime agreed to irrevocably release the $750,000 deposit to OCDA and that deposit is non-refundable. *See Nat'l Union*, 907 S.W.2d at 520.

Under the plain language of the second amendment, the only act required by ODCA for the deposit to become non-refundable was the extension of the closing date. When OCDA extended the closing date, the initial deposit was expressly and irrevocably released to ODCA and thus ceased to be property of Prime. Prime bargained for an extension of the closing date and once that

extension was granted, Prime had received its consideration and could no longer recover its initial deposit.

To establish a breach of contract claim under Texas law, a plaintiff must prove, inter alia, damages to the plaintiff resulting from that breach. *Harris v. Amer. Protection Ins. Co.*, 158 S.W.3d 614, 622–23 (Tex. App.—Fort Worth 2005, no pet.). Because Prime sought only the deposit money as damages for its contract claim, and Prime is no longer entitled to these funds, Prime failed to allege all the elements of a breach of contract. The district court was correct to grant summary judgment on Prime's contract claim.

Prime argues that this same logic does not doom its "money had and received" claim because the claim is equitable in nature. Prime asks us to ignore the express terms of the contract because "in equity and good conscience" the money belongs to Prime. Although cloaked in the guise of equity, Prime seeks to reassert its contract claim, arguing that OCDA should return the deposit because its lack of cooperation in due diligence is to blame for the collapse of the Agreement. Generally speaking, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory. *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671 (Tex. 2000); *TransAm. Natural Gas Corp. v. Finkelstein*, 933 S.W.2d 591, 600 (Tex. App.–San Antonio 1996, writ denied); *Lone Star Steel Co. v. Scott*, 759 S.W.2d 144, 154 (Tex. App.–Texarkana 1988, writ denied). Parties should be bound by their express agreements and when a valid agreement already addresses the matter, recovery under an equitable theory is generally inconsistent with the express agreement. *See TransAm. Natural Gas*, 933 S.W.2d at 600. The Texas Court of Appeals has noted that this rule is particularly appropriate when sophisticated parties bargain for express contracts. *Id.* We see no reason to allow Prime to escape the express language of the second amendment under the

guise of equity and find no error in the grant of summary judgment on the money had and received claim.[2]

Prime also argues that the district court was incorrect to find that its fraud and negligent misrepresentation claims failed because disclaimers in the Agreement negated any reliance.[3] Under Texas law, contracting parties may create contractual provisions that disclaim reliance. *See Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 61 (Tex. 2008); *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997). "The contract and the circumstances surrounding its formation determines whether the disclaimer of reliance is binding." *Schlumberger*, 959 S.W.2d at 179–80. The Texas Supreme Court has found a clear and specific intent to disclaim reliance when "sophisticated parties, represented by competent legal counsel, included an emphatic particularized disclaimer of reliance in the contract." *Schlumberger*, 959 S.W.2d at 180.

As the district court noted, this was a multimillion dollar arm's length transaction for the sale of a downtown Dallas commercial building between sophisticated parties, both represented by attorneys. *See Forest Oil*, 268 S.W.3d at 60–61; *Coastal Bank SSB v. Chase Bank of Texas, N.A.*, 135 S.W.3d 840, 843 (Tex. App.–Houston 2004). The Agreement between ODCA and Prime contains

---

[2] Although the district court decided this issue based on its interpretation of the contract, we are free to affirm on different grounds. *See Seneca v. Phillips Petroleum Co.*, 963 F.2d 762 (5th Cir. 1992) (noting that the court of appeals can affirm on different grounds than those relied upon by the district court). Because we decide the issue on different grounds, we express no opinion as to the merits of the district court's analysis. *See Terra Res., Inc. v. Lake Charles Dredging & Towing Inc.*, 695 F.2d 828, 832 n.9 (5th Cir. 1983).

[3] Each of the separate fraud-related claims brought by Prime share in common the requirement that the plaintiff must prove justifiable reliance on the representations made by the defendant. *See* TEX. BUS. & COM. CODE § 27.01(a)(1)(B), (a)(2)(D) (statutory fraud); *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001) (fraud); *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001) (fraudulent inducement); *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991) (negligent misrepresentation); *Coldwell Banker Assocs. v. Ryan Equity Partners Ltd.*, 181 S.W.3d 879, 888 (Tex. App.–Dallas 2006, no pet.) (statutory fraud).

extensive disclaimers in which Prime disclaims reliance on representations made by ODCA and specifically any reliance on the truth, accuracy, or completeness of any documents relating to the property. Furthermore, there is a merger clause which prevents reliance on later oral representations. *See Armstrong v. Am. Home Shield Corp.*, 333 F.3d 556, 571 (5th Cir. 2003). Given the disclaimers and taking into account the nature of the transaction and the totality of the circumstances surrounding the Agreement, we agree with the district court that the justifiable reliance element common to all of the fraud-related claims has been negated as a matter of law. *See U.S. Quest Ltd. v. Kimmons*, 228 F.3d 399, 403 (5th Cir. 2000); *Forest Oil Corp.*, 268 S.W.3d at 60–61; *Schlumberger*, 959 S.W.2d at 179–80.

AFFIRMED.