W. EUGENE DAVIS, Circuit Judge:
In this appeal, we consider whether allegedly defamatory statements made elsewhere but which caused damage to the plaintiff in the forum state are sufficient to confer personal jurisdiction over the defendant when the content and context of the statements lack any connection with the forum state. For the following reasons, we agree with the district court that the plaintiff failed to establish personal jurisdiction over the defendant and affirm.
*377 I.
The plaintiff, Roger Clemens, moved to Texas in 1977 at the age of fifteen. In 1983, after playing college baseball for the University of Texas, he was drafted by the Boston Red Sox, a Major League Baseball team. Clemens played for the Red Sox until 1996, when he signed with the Toronto Blue Jays. As a member of the Blue Jays, Clemens met the defendant Brian McNamee, an athletic trainer for the Toronto organization. In 1999, Clemens joined the New York Yankees, and one year later, the Yankees hired McNamee as an assistant trainer. Clemens trained with McNamee until some point in 2007.[1] Over the course of their professional relationship, McNamee traveled to Texas approximately thirty-five times to train Clemens and other professional athletes. Although he temporarily resided in other cities during his professional baseball career, Clemens returned to Houston at the end of every baseball season. He currently lives in Texas with his wife and four children.
In the summer of 2007, federal authorities contacted McNamee in New York City in connection with the Government’s criminal investigation of BALCO, a Bay Area laboratory allegedly involved in the development and sale of performance-enhancing drugs. At the interview, authorities told McNamee that the Government had sufficient evidence to secure a conviction against McNamee for delivering illegal performance-enhancing drugs to athletes. In lieu of prosecution, the United States Attorney’s Office for the Northern District of California gave McNamee use immunity for any statements he gave in relation to the Government’s investigation. McNamee was interviewed by the Government for two days during which he told investigators that he had injected Clemens with performance-enhancing drugs in 1998, 2000, and 2001. These injections, according to McNamee, took place in Toronto and New York.
A short time after his interview with the Government, federal authorities contacted McNamee again, this time requesting that he cooperate with a Major League Baseball investigation being conducted by former United States Senator George Mitchell into the use of performance-enhancing drugs in the game (“Mitchell Commission”). Federal investigators arranged and participated in McNamee’s meeting with Mitchell in New York. On December 12, 2007, the Mitchell Commission released the findings of its investigation in its Report to the Commissioner of Baseball of an Independent Investigation Into the Illegal Use of Steroids and Other Performance Enhancing Substances By Players In Major League Baseball (“Mitchell Report”). The Mitchell Report included McNamee’s statements concerning Clemens’ use of performance-enhancing drugs. Every national news service, as well as every major newspaper in Texas, republished McNamee’s statements. Following the Mitchell Report’s release, McNamee spoke with John Heyman, a senior writer for the internet site SI.com. During this interview at McNamee’s house in Queens, New York, McNamee repeated the statements that had been published in the Mitchell Report. Heyman posted an article containing these statements to the website SI.com on January 7, 2008.
In January 2008, Clemens filed suit for defamation against McNamee in Texas state court. McNamee removed the action to the United States District Court and moved to dismiss Clemens’ complaint for *378 inter alia lack of personal jurisdiction and failure to state a claim. The district court dismissed Clemens’ defamation action for lack of personal jurisdiction because the focal point of McNamee’s statements about Clemens was not Texas. The district court also found, in the alternative, that if the court had personal jurisdiction over McNamee, his statements to the Mitchell Commission were cloaked with absolute immunity. This appeal followed.
II.
A.
Whether the district court can properly exercise personal jurisdiction over the defendant is an issue of law we review de novo. Felch v. Tranportes LarMex SA DE CV, 92 F.3d 320, 324 (5th Cir.1996). The plaintiff bears the burden of establishing personal jurisdiction over a non-resident defendant and that burden is met by making a prima facie showing. Kelly v. Syria Shell Petroleum Dev. B.V., 213 F.3d 841, 854 (5th Cir.2000). We must accept the plaintiffs uncontroverted allegations as true, and resolve in his favor all conflicts between the facts contained in the parties’ affidavits and other documentation. Revell v. Lidov, 317 F.Sd 467, 469 (5th Cir.2002) (citation omitted).
B.
A federal district court sitting in diversity may exercise personal jurisdiction over a foreign defendant if (1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution. Latshaw v. Johnston, 167 F.3d 208, 211 (5th Cir.1999). Because Texas’s long-arm statute reaches to the constitutional limits, the question we must resolve is whether exercising personal jurisdiction over the defendant offends due process. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 413-14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).
The Due Process Clause of the Fourteenth Amendment permits a court to exercise personal jurisdiction over a foreign defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice. Revell, 317 F.3d at 470 (footnotes and internal citation omitted). There are two types of minimum contacts: contacts that give rise to specific personal jurisdiction and those that give rise to general jurisdiction. Wilson v. Belin, 20 F.3d 644, 647 (5th Cir.1994). On appeal, Clemens only argues that McNamee’s defamatory statements were sufficient to confer specific personal jurisdiction; accordingly, we only examine whether McNamee’s contacts with Texas were sufficient to confer jurisdiction under the Supreme Court and this Circuit’s specific personal jurisdiction jurisprudence. Specific jurisdiction exists when “the defendant has ‘purposefully directed’ his activities at residents of the forum ... and the litigation results from alleged injuries that arise out of or relate to those activities.” See Burger King v. Rudzewicz, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citations omitted); Jones v. PettyRay Geophysical Geosource, Inc., 954 F.2d 1061, 1068 n. 9 (5th Cir.1992). The nonresident’s purposefully directed activities in the forum must be such that he could reasonably anticipate being haled into court in the forum state. Burger King, 471 U.S. at 474, 105 S.Ct. 2174. Specific jurisdiction also requires a sufficient nexus *379 between the non-resident’s contacts with the forum and the cause of action. Helicopteros Nacionales de Colombia, S.A., 466 U.S. at 414 n. 8, 104 S.Ct. 1868.
We first address whether McNamee had sufficient minimum contacts with the forum to support specific personal jurisdiction. It is essential that there be some act by which the defendant purposefully avails himself of the privilege of conducting activities with the forum state, thus invoking the benefits and protections of its laws. Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The “purposeful availment” requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts. Burger King, 471 U.S. at 472, 105 S.Ct. 2174 (citation omitted). In this case, the relevant contacts from which Clemens’ cause of action arises are the allegedly defamatory remarks about Clemens which McNamee made to the Mitchell Commission and John Heyman of SI.com. Therefore, the issue narrows to whether these defamatory remarks constituted purposeful availment such that McNamee could have reasonably anticipated being haled into a Texas court as a result of his statements.
The most instructive case on this issue from the Supreme Court is Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). In Calder, a Hollywood gossip tabloid published an allegedly libelous story about the actress Shirley Jones. Id. at 785, 104 S.Ct. 1482. Jones filed suit in California against the author of the story and the editor of the tabloid. Id. The Supreme Court held that California courts had jurisdiction over the defendants because they had “expressly aimed” their conduct towards California:
The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms both of respondent’s emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and the harm.
Id. at 788-89, 104 S.Ct. 1482 (emphasis added).
To support personal jurisdiction against the defaming defendant, this court has emphasized Colder*s requirement that the forum “be the focal point of the story.” Id. For example, in Revell v. Lidov, the plaintiff sued a non-resident defendant in Texas after the defendant alleged on a Columbia University website that the plaintiff had advance knowledge of the bombing of Pan Am Flight 103. Revell, 317 F.3d at 469. Although we recognized that the plaintiff suffered emotional distress and damage to his professional reputation in Texas, the Revell court concluded that the alleged defamatory statements were inadequately directed to Texas to satisfy minimum contacts under Calder. Id. at 473. As this court explained:
First, the article written by [plaintiff] about [defendant] contains no reference to Texas, nor does it refer to the Texas activities of [plaintiff] and it was not directed at Texas readers as distinguished from readers in other states. Texas was not the focal point of the article or the harm suffered, unlike Calder, in which the article contained descriptions of the California activities of the plaintiff, drew upon California sources, and found its largest audience in California.

Id.

In Fielding v. Hubert Burda Media, Inc., 415 F.3d 419 (5th Cir.2005), we again *380 required the plaintiff to show that Texas was the focus of the defamatory communication. In Fielding, the plaintiffs were the Swiss Ambassador to Germany and his American wife, a former Mrs. Texas who was a resident of Texas; the defendants were several German newspapers who wrote allegedly libelous articles about the plaintiffs’ social lives in Berlin. Id. The plaintiffs sued the defendants in Texas, arguing that jurisdiction was proper because the stories harmed their reputation among friends and family in Texas. Id. at 424. Despite the alleged harm suffered in the forum, the Fielding court declined to find personal jurisdiction because “the clear focus of the ... articles was the alleged affair between [the Ambassador] and [his alleged mistress] and its aftermath, activities which occurred in Germany and Switzerland.” Id. at 426.
We read Calder as requiring the plaintiff seeking to assert specific personal jurisdiction over a defendant in a defamation case to show “(1) the subject matter of and (2) the sources relied upon for the article were in the forum state.” Id. (citing Revell, 317 F.3d at 474 & n. 48). Thus the question in this case further narrows to whether MeNamee’s allegedly defamatory statements were aimed at or directed to Texas. As in Revell and Fielding, the statements in this case concerned non-Texas activities — the delivery of performance-enhancing drugs to Clemens in New York and Canada. The statements were not made in Texas or directed to residents of Texas.
In support of jurisdiction, Clemens points to the harm he suffered in Texas and to McNamee’s knowledge of the likelihood of such damage in the forum. Yet under Calder, Revell, and Fielding, Clemens has not made a prima facie showing that McNamee made statements in which Texas was the focal point: the statements did not concern activity in Texas; nor were they made in Texas or directed to Texas residents any more than residents of any state. As such, the district court did not err in dismissing Clemens’ suit for lack of personal jurisdiction over McNamee.[2]
III.
For the foregoing reasons, the district court’s judgment is affirmed.
AFFIRMED.

. Clemens retired from the Yankees in 2003. In 2004, he joined the Houston Astros and played with the team for three seasons. In 2007, he signed a one-year contract with the Yankees. At present, he is not a member of any professional baseball team.

. See also Mullins v. TestAmerica, Inc., 564 F.3d 386, 401 (5th Cir.2009) ("Under Calder, ... the plaintiffs residence in the forum, and suffering of harm there, will not alone support [personal] jurisdiction.”) (brackets in original, citation omitted); Panda Brandywine Corp. v. Potomac Elec. Power Co., 253 F.3d 865, 870 (5th Cir.2001) ("If we were to accept Appellants’ arguments, a nonresident defendant would be subject to jurisdiction in Texas for an intentional tort simply because the plaintiff’s complaint alleged injury in Texas to Texas residents regardless of the defendant's contacts.”); Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 212 (5th Cir.1999) (citations omitted) (foreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum).