**NORTH TEXAS OPPORTUNITY FUND L.P., Plaintiff,**

v.

**HAMMERMAN & GAINER INTERNA-TIONAL, INC., Lawrence Pratt, Larry Oney, Christopher Oney, HGI Catastrophe Services, L.L.C., and Principal Resource Group, LLC, Defendants.**

**Civil Action No. 3:14–cv–1906–P.**

United States District Court, N.D. Texas, Dallas Division.

Signed April 22, 2015.

Alexander M. Brauer, Benjamin L. Stewart, Clayton E. Bailey, Bailey Brauer PLLC, Dallas, TX, for Plaintiff.

Lisa Staler Gallerano, Matthew Vernon Lloyd, Heather L. Peckham, Akin Gump Strauss Hauer & Feld LLP, Dallas, TX, for Defendants.

### ORDER

JORGE A. SOLIS, District Judge.

Now before the Court are two Motions to Dismiss, filed by Defendants on June 3, 2014. Doc. 4; 6. Plaintiff filed its responses on June 24, 2014. Doc. 8; 10. Defendants filed their replies on July 15, 2014. Doc. 15; 16.

After reviewing the parties' briefing, the evidence, and the applicable law, the Court GRANTS in part and DENIES in part Defendants' Motions to Dismiss.

## I. Background

This case arises out of allegedly fraudulent conduct surrounding the sale of preferred stock. Doc. 1–6. In 2003, Plaintiff North Texas Opportunity Fund, L.P. ("NTOF") entered into discussions with Defendants Larry Oney and Lawrence Pratt ("Pratt") regarding a potential investment in Defendant Hammerman & Gainer International, Inc. ("H & G"). Id. at 3. At the time, Larry Oney was the sole shareholder of H & G and a director and officer of H & G. Id. On June 7, 2004, NTOF, H & G, and Larry Oney executed the Series A Preferred Stock Purchase Agreement (the "Stock Purchase Agreement") in Texas, through which NTOF purchased 2,500,000 shares of H & G preferred stock for $2,500,000. Id. The Stock Purchase Agreement is governed by Texas law and designated H & G's Texas location as its headquarters. Id. at 4. NTOF purchased another 500,000 shares for $500,000 on September 20, 2005. Id. This made NTOF the owner of approximately 45% of H & G. Id. at 16 n. 7. Despite the Stock Purchase Agreement's requirement that H & G periodically provide audited financial statements, H & G continually delayed the audit and managed to avoid providing audited statements for the entire period that NTOF was a shareholder. Id. at 5. NTOF was also given the right to appoint one person to H & G's three-member board of directors (the "Board"), the other two members being Larry Oney and his son, Christopher Oney. Doc. 1–6 at 4. The Board initially met in Texas on July 13, 2004 and was attended by Pratt and Larry Oney. Id. at 5. The Board met frequently after. Id.

In December 2005, H & G created a wholly owned subsidiary, Defendant HGI Catastrophe Services, L.L.C. ("HGI"), to handle catastrophic claims adjusting work and reduce liability exposure inherent in

the work. *Id.* at 6. Shortly after, Christopher Oney formed an independent company, Defendant Principal Resources Group LLC ("PRG"), to obtain catastrophic claims contracts. *Id.* NTOF was never notified that Christopher Oney had created a competing business. *Id.* Additionally, in 2006, Defendants began to omit certain comments from their regular financial statements to NTOF. Doc. 1–6 at 7.

According to NTOF, Defendants initiated their fraudulent scheme on September 1, 2006 during a telephonic Board meeting where Larry Oney, Christopher Oney, and Pratt called in from Louisiana and NTOF's representative called in from Dallas. *Id.* at 8. At that time, Defendants "took advantage of the physical absence of NTOF representatives to execute a secret contract between HGI [ ] and PRG (the "PRG Contract")." *Id.* The agreement provided that PRG would obtain work contracts for HGI, and HGI would pay PRG a commission. *Id.* at 9. This arrangement allowed H & G to divert business opportunities through PRG, thereby hiding money with PRG and artificially reducing H & G's value. *Id.* In the financial statements provided to NTOF, Defendants disguised this money as "administrative expenses" ranging from $2.15 million to $5.45 million per month. *Id.* at 11. In spite of these expenses, H & G's profits increased dramatically. *Id.*

In 2007 and 2008, Defendants increased their efforts to buyout NTOF's stock in H & G. *Id.* at 12–13. Larry Oney flew to Texas in April 2008 to pursue a buyout offer. *Id.* at 13. Over several months, Pratt, Larry Oney, and NTOF eventually worked out a deal where H & G would repurchase NTOF's 3 million shares of preferred stock for $4 million. *Id.* H & G allegedly paid this buyout price with money from PRG. *Id.* at 13–14.

In February 2011, NTOF learned of PRG's existence through an IRS investigation into "H & G's use of related-party transactions to hide revenue and profits." *Id.* at 14–15.

Based on this information, NTOF filed suit against H & G, Pratt, and Larry Oney one year later, in February 2012. *Id.* at 16–17. However, because Defendants were under criminal investigation, the parties entered a tolling agreement, dismissing the case without prejudice and tolling the statute of limitations until April 15, 2014. *Id.* at 17. Accordingly, NTOF filed this case on February 9, 2014. Doc. 1–6.

Now, Defendants seek to dismiss NTOF's complaint on grounds that the Court lacks personal jurisdiction over Larry Oney, Christopher Oney, Pratt, HGI, and PRG. Doc. 4; 8. Defendants also seek to dismiss NTOF's complaint for failing to state a plausible claim for relief.

## II. Motion to Dismiss
### a. Personal Jurisdiction

█ Federal Rule 12(b)(2) provides for the dismissal of a complaint when the court lacks personal jurisdiction over a defendant in the case. Fed.R.Civ.P. 12(b)(2). "A federal court may exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." *McFadin v. Gerber,* 587 F.3d 753, 759 (5th Cir.2009). Texas's long-arm statute reaches to the constitutional limits, and, therefore, the relevant inquiry is whether the exercise of personal jurisdiction over a non-resident defendant offends due process. *Clemens v. McNamee,* 615 F.3d 374, 378 (5th Cir.2010). Plaintiff bears the burden to present a *prima facie* case that jurisdiction is proper. *Id.*

■ "The Due Process Clause of the Fourteenth Amendment permits a court to exercise personal jurisdiction over a foreign defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Id.* Minimum contacts must give rise to specific or general jurisdiction. *Id.* Plaintiff only argues that the Court has specific jurisdiction over Defendants.

■ "Specific jurisdiction exists when 'the defendant has purposefully directed his activities at residents of the forum ... and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Id.* (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). For a defendant to be subject to specific jurisdiction, his purposefully directed activities "must be such that he could reasonable anticipate being haled into court in the forum state," and there must be a "sufficient nexus between the non-resident's contacts with the forum and the cause of action." *Clemens*, 615 F.3d at 378–79 (citing *Burger King*, 471 U.S. at 474, 105 S.Ct. 2174 and *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). When examining specific jurisdiction, "[e]ach defendant's contacts with the forum State must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). Additionally, "[s]pecific jurisdiction is a 'claim-specific inquiry.'" *Dontos v. Vendomation NZ Ltd.*, 582 Fed.Appx. 338, 343 (5th Cir.2014) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir.2006)). "A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim." *Id.*

■ Whether a party's conduct creates sufficient minimum contacts to a forum State is highly fact-dependent. *See Dontos*, 582 Fed.Appx. at 345. "A single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted." *Lewis v. Fresne*, 252 F.3d 352, 358–59 (5th Cir. 2001). For intentional tort claims, foreign communications directed at the forum can create personal jurisdiction "[w]hen the actual content of communications with a forum gives rise to intentional tort causes of action." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir.1999). In fact, even wholly foreign activity that only has "consequences or effects within the forum will establish minimum contacts if the tortious conduct is purposefully or expressly aimed at the forum state." *Dontos*, 582 Fed.Appx. at 344–45; *Calder*, 465 U.S. at 789, 104 S.Ct. 1482 (finding personal jurisdiction "proper in California based on the 'effects' of [the parties'] Florida conduct in California"). Where parties are "participants in an alleged wrongdoing intentionally directed at a [forum State's] resident, [ ] jurisdiction over them is proper on that basis." *Calder*, 465 U.S. at 790, 104 S.Ct. 1482.

### i. Larry Oney and Lawrence Pratt

■ Defendants' first motion argues that Larry Oney and Lawrence Pratt are not subject to personal jurisdiction. Doc. 4. NTOF claims that specific jurisdiction is proper because Larry Oney and Pratt have purposefully directed activities to Texas by sending NTOF numerous communications containing fraudulent misrepresentations and omissions of material information. Doc. 8 at 9–10.

In a similar case, the Fifth Circuit found that personal jurisdiction existed over a foreign party based on the party's directed communications to the forum State because those communications gave rise to the plaintiff's intentional tort causes of action. *See Brandt,* 195 F.3d at 213. There, even the foreign party's silence supported the existence of personal jurisdiction because "when the claim arises from a breach of fiduciary duty based on a failure to disclose material information, the fact that the lawyer continually communicated with the forum while steadfastly failing to disclose material information shows the purposeful direction of material omissions to the forum state." *Id.*

Here, the complaint alleges that Larry Oney and Pratt continually directed communications to NTOF in Texas regarding the Board meetings and H & G's financial status "while steadfastly failing to disclose material information." *See id.;* Doc. 1–6. Specifically, the complaint alleges that Larry Oney and Pratt visited Texas multiple times in order to execute the original Stock Purchase Agreement and to further NTOF's relationship with H & G. Doc. 1–6 at 3, 5. The parties even designated Texas law to govern interpretation of the Stock Purchase Agreement. Moreover, Larry Oney and Pratt attended a meeting between H & G and NTOF in Texas on July 13, 2004, and Larry Oney came to Texas in 2008 to discuss the offer to buy out NTOF. Doc. 1–6 at 5, 13. This situation is not one where the "communications to Texas rest[ ] on nothing but the mere fortuity that [the plaintiff] happens to be a resident of the forum.'" *See Holt Oil & Gas Corp. v. Harvey,* 801 F.2d 773, 778 (5th Cir.1986) (quotations omitted).

Even if the communications "may have been fortuitous, [ ] the tortious nature of the directed activity constitutes purposeful availment." *See Brandt,* 195 F.3d at 213.

At one point, the complaint states that Larry Oney and Pratt used NTOF's physical absence from a telephonic board meeting to execute and conceal the PRG Contract between HGI and PRG. *Id.* at 8. Despite subsequently directing numerous communications to NTOF in Texas, Larry Oney and Pratt "continued to remain silent about PRG's efforts to develop a competing business." *Id.* Based on these allegations, the communications directed by Larry Oney and Pratt to Texas gave rise to NTOF's intentional tort causes of action. Therefore, NTOF has established a *prima facie* case of minimum contacts over Larry Oney and Pratt with respect to its claims for fraud, fraud by nondisclosure, fraudulent inducement, negligent misrepresentation, theft, conversion, tortious interference with a contract, money had and received, and breach of fiduciary duty. *See* Doc. 1–6 at 19–25.

#### ii. Christopher Oney

Defendants' second motion argues that Christopher Oney is not subject to personal jurisdiction. Doc. 6. The Court disagrees. The complaint alleges that Christopher Oney had a duty to disclose the relationship between PRG and H & G. *See* Doc. 1–6. Despite this, Christopher Oney failed to make such a disclosure during any of the frequent telephonic Board meetings with NTOF in Texas. Doc. 1–6 at 8; *see also* Doc. 7–1 (Christopher Oney's declaration stating that he attended periodic telephonic H & G Board meetings). Christopher Oney also allegedly prepared a deceptive presentation that was sent to NTOF. *See* Doc. 1–6 at 12. None of Christopher Oney's communications directed to NTOF in Texas disclosed PRG or the PRG Contract. Therefore, similar to the communications sent by Larry Oney and Pratt, Christopher Oney's communications to NTOF gave rise to NTOF's intentional tort causes of action for fraud, fraud by

nondisclosure, and fraudulent inducement. *Id.* at 19–20. Accordingly, NTOF has established a *prima facie* case of minimum contacts.

### iii. Applicability of the Fiduciary Shield Doctrine

 Defendants' fiduciary shield argument is unavailing. Doc. 4 at 12–14; 6 at 17–18. The fiduciary shield doctrine generally prevents courts from exercising personal jurisdiction over individuals who have only taken actions in Texas on a corporation's behalf. *See Stull v. LaPlant,* 411 S.W.3d 129, 137–38 (Tex.App.-Dallas 2013, no pet.). However, "corporate officers are not shielded from exercise of specific jurisdiction for fraudulent or tortuous acts for which they may be liable." *Lewis v. Indian Springs Land Corp.,* 175 S.W.3d 906, 917 (Tex.App.-Dallas 2005, no pet.); *Cerbone v. Farb,* 225 S.W.3d 764, 769 (Tex. App.-Houston [14th Dist.] 2007, no pet.) (the fiduciary shield doctrine "does not protect a corporate officer from specific personal jurisdiction as to intentional torts or fraudulent acts"). "[W]hile the fiduciary-shield doctrine could prohibit this court from ascribing acts of the [corporation] to the [individual defendant], it does not prohibit [the defendant] from being held personally liable for his own tortious conduct simply because he is an office of a corporation." *Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC,* 255 Fed.Appx. 775, 795 (5th Cir.2007). In this case, NTOF's allegations against Christopher Oney, Larry Oney, and Pratt are rooted in fraud. Because, as discussed below, NTOF has sufficiently alleged fraud against them as individuals, the fiduciary shield doctrine does not prohibit the Court from exercising jurisdiction over Christopher Oney, Larry Oney, and Pratt.

### iv. HGI

 Next, NTOF argues that HGI is subject to personal jurisdiction in Texas based on the communications sent by Christopher Oney, Larry Oney, and Pratt on behalf of HGI. Doc. 10 at 9. While the complaint does not specifically allege that any communications directed to NTOF were made on behalf of HGI rather than H & G, the allegations as a whole create a reasonable inference that at least some of the communications were made on behalf of HGI. The compliant suggests that Christopher Oney, Larry Oney, and Pratt can act as representatives of HGI, which is a wholly owned subsidiary of H & G. *See* Doc. 1–6. Additionally, Christopher Oney, Larry Oney, and Pratt sent multiple communications regarding HGI and HGI's finances. These may have been sent on behalf of HGI. Therefore, because the Court has already found that the communications sent by Christopher Oney, Larry Oney, and Pratt gave rise to NTOF's intentional tort causes of action, NTOF has established a *prima facie* case of minimum contacts for its fraud, fraud by nondisclosure, and fraudulent inducement claims against HGI.

### v. PRG

 Finally, the Court has personal jurisdiction over PRG based on its alleged participation in the fraudulent scheme. While PRG did not take any actions in Texas or direct any communications towards Texas, the complaint alleges that Christopher Oney, who controls PRG, knew about the plan to defraud NTOF in Texas and used PRG to participate in the fraud. Doc. 1–6. This is not a case where PRG was an unaware, passive party to the fraud. *Cf. Dontos v. Vendomation NZ Ltd.,* 582 Fed.Appx. 338, 345 (5th Cir.2014) ("For example, if an individual or corporation who is a mere 'passive transferee,' is unlikely to be subject to jurisdiction in the creditor's resident state. However, if the

transferee 'precipitates and directs an alleged fraudulent transfer at the expense of a known, ... creditor in Texas whose right to payment arises out of contracts that share a strong connection with Texas,' then the transferee is subject to suit in Texas court." (quoting *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 401–02 (5th Cir. 2009))).

At the time Christopher Oney created PRG and used it to hide H & G's money, Christopher Oney knew about NTOF's location in Texas, the ongoing relationship between NOTF and H & G, the Stock Purchase Agreement's connection with Texas, and the plan to defraud NTOF. Doc. 1–6. By using PRG to further the fraudulent scheme against NTOF, Christopher Oney made PRG a "participant[ ] in an alleged wrongdoing intentionally directed at a [Texas] resident," which "could reasonably anticipate being haled into court there." *See Calder*, 465 U.S. at 790, 104 S.Ct. 1482 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 290, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). Therefore, PRG is subject to suit in Texas based on NTOF's fraud, fraud by nondisclosure, and fraudulent inducement claims.

### vi. Fair Play and Substantial Justice

Once a plaintiff establishes minimum contacts, the burden shifts to the defendant to show that jurisdiction would violate traditional notions of fair play and substantial justice. *Brandt*, 195 F.3d at 215. "The interests to balance in this determination are the burden on the defendant having to litigate in the forum; the forum State's interests in the lawsuit; the plaintiff's interests in convenient and effective relief; the judicial system's interest in efficient resolution of controversies; and the State's shared interest in furthering fundamental social policies." *Id.*

Here, Defendants argue that it would be unfair to hale Christopher Oney, Larry Oney, Pratt, HGI, and PRG into court in this inconvenient forum because they have not purposefully interjected themselves in Texas and have had limited contact with the State on behalf of H & G. Doc. 4 at 13–14; 6 at 18–19. The Court disagrees. Litigation in Texas would place only a minor inconvenience on Defendants, who are Louisiana residents. *See Brandt*, 195 F.3d at 215 ("However, once minimum contacts are established, the interests of the forum and the plaintiff justify even large burdens on the defendant."). Additionally, Texas has an interest in this suit because NTOF is a Texas limited partnership with a principal place of business in Texas. *See* Doc. 1–6 at 1. Ultimately, Defendants have not shown that assertion of jurisdiction over Christopher Oney, Larry Oney, Pratt, HGI, or PRG would violate traditional notions of fair play and substantial justice.

### b. Failure to State a Claim

Next, Defendants seek to dismiss the complaint for failing to state a claim under Rule 12(b)(6). Under Federal Rule of Civil Procedure 8(a), a complaint must contain "a short, plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Federal Rule 12(b)(6) provides for the dismissal of a complaint when a defendant shows that the plaintiff has failed to state a claim for which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The factual matter contained in the complaint must allege actual facts, not legal conclusions masquerading as facts. *Id.* ("Although for

the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955)). Additionally, the factual allegations of a complaint must state a plausible claim for relief. *Id.* at 679, 129 S.Ct. 1937. A complaint states a "plausible claim for relief" when the factual allegations contained therein infer actual misconduct on the part of the defendant, not a "mere possibility of misconduct." *Id.; see also Jacquez v. Procunier*, 801 F.2d 789, 791–92 (5th Cir.1986).

The Court's focus in a 12(b)(6) determination is not whether the plaintiff should prevail on the merits but rather whether the plaintiff has failed to state a claim. *Twombly*, 550 U.S. at 563 n. 8, 127 S.Ct. 1955 (holding "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder"); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (overruled on other grounds) (finding the standard for a 12(b)(6) motion is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims").

#### i. Release

■ Defendants assert that NTOF released its claims against them through the Redemption Agreement. Doc. 4; 6. On the other hand, NTOF argues that the Redemption Agreement was fraudulently induced and does not cover its claims. Doc. 8 at 13–14; 10 at 12–15. Defendants believe NTOF's fraudulent inducement argument cannot save its claims from release because the petition "contains no allegations that had [NTOF] known of the 'true

value' of its H & G investment it never would have sold the stock and entered into the release." Doc. 16 at 7.

The central dispute in this case is whether NTOF was tricked into entering the agreement to sell back its preferred stock in H & G without accurate information regarding H & G's value. *See* Doc. 1–6. NTOF claims that it agreed to sell its shares back to H & G at a significantly lower price than the shares were worth. *Id.* at 16. This allegation creates a reasonable inference that NTOF would not have agreed to the terms of the agreement if it had known H & G's 'true value.' Accordingly, Defendants' release argument does not defeat NTOF's claims at the motion to dismiss stage.

#### ii. Fraud and Negligent Misrepresentation

■ Next, Defendants argue that NTOF's fraud and negligent misrepresentation claims fail to satisfy Rule 9(b)'s heightened pleading standards. Doc. 4 at 16; 6 at 20. Cases involving fraud and mistake are subject to more stringent pleading requirements. Federal Rule 9(b) states "a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). To satisfy Rule 9(b)'s pleading requirements, the plaintiffs must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir.2004) (*quoting Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177–78 (5th Cir.1997), *cert. denied*, 522 U.S. 966, 118 S.Ct. 412, 139 L.Ed.2d 315 (1997)). For claims of fraud by nondisclosure, the plaintiffs must "plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the repre-

sentations misleading." *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir.2006) (quotations omitted).

Defendants contend that the complaint does not allege what misrepresentations were made, when they were made, where they were made, their content, or why they were fraudulent. Doc. 4. at 18. Defendants also believe they had no duty to disclose the existence of PRG. *Id.* at 18–20. In support, they point out that NTOF knew about the administrative expenses and Christopher Oney's responsibilities, which he performed on behalf of PRG. *Id.* at 18–20. Finally, Defendants contend that the fund transfers to PRG were not themselves fraudulent. *Id.*

First, the complaint sufficiently alleges the what, when, where, and why of a fraud claim. It accuses Defendants of acting in concert to commit fraud by diverting money from H & G to PRG and then withholding information to obfuscate H & G's true value. *See* Doc. 1–6 at 9. Specifically, the complaint alleges that Defendants attempted to prevent NTOF from discovering H & G's relationship with PRG by refusing NTOF's requests to have a third party audit H & G's finances, by entering into the agreement between PRG and H & G without NTOF's knowledge, and by then disguising H & G's payments to PRG as "administrative expenses." Doc. 1–6 at 5–7, 11. NTOF claims that the Defendants Christopher Oney, Larry Oney, and Pratt should have disclosed H & G's relationship with PRG through the Board meetings, the Board reports, and the November 2007 Board presentation created by Larry Oney, Christopher Oney, and Pratt. *Id.* at 11–12. According to the complaint, by omitting this information, H & G hid its true value in order to buy back NTOF's preferred stock at a reduced price. These allegations sufficiently "plead the type of facts omitted, the place in which the omis-

sions should have appeared, and the way in which the omitted facts made the representations misleading." *Carroll*, 470 F.3d at 1174 (quotations omitted).

 Next, the complaint alleges sufficient facts to indicate a duty to disclose. Under Texas law,

> [a] duty to speak arises by operation of law when (1) a confidential or fiduciary relationship exists between the parties; or (2) one party learns later that his previous affirmative statement was false or misleading; or (3) one party knows that the other party is relying on a concealed fact, provided that the concealing party also knows that the relying party is ignorant of the concealed fact and does not have an equal opportunity to discover the truth; or (4) one party voluntarily discloses some but less than all material facts, so that he must disclose the whole truth, i.e., all material facts, lest his partial disclosure convey a false impression.

*Union Pac. Res. Group v. Rhône–Poulenc*, 247 F.3d 574, 586 (5th Cir.2001). According to the complaint, Defendants' previous statements at Board meetings disclosed only a portion of the material facts regarding H & G's finances, and thereby conveyed a false impression. Taking the assertions the complaint as true, this would trigger the duty to disclose. Thus, the complaint creates a reasonable inference that Defendants had a duty to disclose H & G's relationship with PRG.

Similarly, NTOF's knowledge of the administrative expenses and Christopher Oney's job responsibilities does not make NTOF's claims implausible. Defendants disclosed only a portion of the material facts by informing NTOF of the administrative expenses and Christopher Oney's responsibilities. In fact, the complaint accuses Defendants of recording the payments to PRG as "administrative ex-

penses" in order to hide the fact that this money was being sent to a related entity run by Christopher Oney. Doc. 1–6 at 11. While NTOF was aware that it was Christopher Oney's duty to acquire contracts for HGI, NTOF was not aware that Christopher Oney would perform this duty on behalf of PRG and receive a substantial commission. Neither disclosure defeats NTOF's fraud claim. NTOF may base a fraud claim on misleading partial disclosures. *See Rhône–Poulenc*, 247 F.3d at 586.

The Court is also unpersuaded by Defendants' argument that the fund transfers to PRG do not show fraud. While Defendants are correct that the mere act of transferring funds does not indicate fraud on its own, such a transfer may suggest fraud if the complaint alleges additional "details that would corroborate a fraudulent scheme, such as when or why [a defendant] moved the money, how much money was transferred, or whether this action was inconsistent with the company's past practices." *See Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1034 (5th Cir.2010). Here, NTOF has alleged sufficient details corroborating a fraudulent scheme. The complaint claims H & G transferred funds to PRG at regular times in order to disguise the money transfers, the amounts transferred were large enough to affect H & G's value and small enough to go unnoticed next to H & G's dramatically increasing profits, and the transfers did not occur until after the scheme began in September 2006. Doc. 1–6 at 8, 11. In sum, the complaint's allegations satisfy the requirements to state a claim for fraud.

### iii. Breach of Contract

Next, Defendants argue that NTOF's breach of contract claims against H & G are barred by the statute of limitations. Doc. 4. NTOF's complaint claims that H & G breached the original Stock Purchase Agreement by failing to produce the audited financial statements required under the agreement. Doc. 1–6. Notably, Defendants do not challenge NTOF's breach of contract claims relating to the missing audits for the fiscal years 2007 and 2008. *See* Doc. 4 at 21; 16 at 9. Defendants only contest NTOF's claims based on the missing audits for closing of the Stock Purchase Agreement in 2004, and fiscal years 2005–2006. Doc. 4 at 21. On the other hand, NTOF claims that the doctrine of equitable estoppel bars Defendants from using the statute of limitations as a defense because Defendants took active steps to keep NTOF from bring suit within the limitations period. Doc. 8 at 21–22.

The Fifth Circuit has applied State law to determine whether a defendant "should be equitably estopped from asserting its [State] statute of limitations defense." *Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 366 (5th Cir.1988). "In Texas, equitable estoppel is proved when a party shows (1) that he was unaware of true facts; (2) that the other party, with actual or constructive knowledge of the true facts, materially misrepresented or concealed these facts intending that the party rely on the misrepresentation or concealment; and (3) that his reliance prejudiced him." *Id.*[1]

1. NTOF's assertion that it is not required to show the misrepresentations were intentional is incorrect because NTOF relies on authority applying federal equitable estoppel, rather than the forum state's doctrine of equitable estoppel. *See* Doc. 8 at 21 (citing *McAllister v. F.D.I.C.*, 87 F.3d 762, 767 (5th Cir.1996) and *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 391 (5th Cir.2002)). *see also Norfolk S. Railway Co. v. Trinity Indus., Inc.*, 2009 WL

Here, the complaint alleges that (1) NTOF was unaware Defendants would never conduct the required audits, (2) Defendants falsely represented to NTOF that they would provide the audited statements in the future, and (3) NTOF relied on these false assurances. Doc. 1–6 at 5, 12–13. Defendants argue that the face of the petition shows NTOF did not rely on any assurances because NTOF decided to sell back its stock without receiving the audited financials. Doc. 16 at 9–10.

While the petition does seem to internally cast doubt on NTOF"s equitable estoppel argument, it does not conclusively disprove NTOF"s claim. The complaint contains allegations that NTOF relied on Defendants' assertions rather than bringing suit. Doc. 1–6 at 12–13. At this stage of litigation, the Court is not in a position to decide that NTOF cannot bring evidence to prove reliance. *See Twombly,* 550 U.S. at 563 n. 8, 127 S.Ct. 1955 ("when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder"). Therefore, NTOF"s breach of contract claim survives dismissal.

#### iv. Tortious Interference

 Defendants argue that NOTF"s tortious interference claims against Larry Oney and Pratt should be dismissed because they are barred by the statute of limitations and by the qualified privilege that Larry Oney and Pratt have as corporate agents of the contracting party. Doc. 4 at 22–23. On the other hand, NTOF claims the statute of limitations is tolled by the discovery rule or fraudulent conceal-

ment. Doc. 8 at 22. NOTF also argues that Larry Oney and Pratt are liable for tortious interference, despite being agents of the contracting party, because they interfered for their personal benefit. *Id.* at 22–23.

 In Texas, "a party to a contract has a cause of action for tortious interference against any third person (a stranger to the contract) who wrongly induces another contracting party to breach the contract." *Holloway v. Skinner,* 898 S.W.2d 793, 794–95 (Tex.1995). "The elements of a cause of action for tortious interference with a contract are: (1) the existence of a contract subject to interference, (2) the occurrence of an act of interference that was willful and intentional, (3) the act was a proximate cause of the plaintiff's damage, and (4) actual damage or loss occurred." *Id.* at 795. Additionally, where "the act of interference was allegedly committed by an individual who was also the lawful representative of the contracting party ... the alleged act of interference must be performed in furtherance of the defendant's personal interests so as to preserve the logically necessary rule that a party cannot tortuously interfere with its own contract." *Id.* at 795–96.

 Tortious interference claims are subject to a two year statute of limitations. *First Nat'l Bank v. Levine,* 721 S.W.2d 287 (Tex.1986); Tex. Civ. Prac. & Rem.Code § 16.003(a). Under Texas law,

[i]n general, a cause of action accrues and limitations begin running when a wrongful act causes a legal injury. The discovery rule, however, "defers accrual of certain causes of action until the plaintiff knew, or exercising reasonable

856340, at *3–*6 (N.D.Tex. Mar. 31, 2009) (discussing the applicable law for determining whether the doctrine of equitable estoppel bars a statute of limitations defense). Be-

cause Texas's doctrine of equitable estoppel requires intent, NTOF must allege such intent to succeed. *See Walker,* 853 F.2d at 366.

diligence, should have known of the wrongful act causing injury." The discovery rule affords protection in only limited instances, applying in (1) cases of fraudulent concealment; and (2) when the nature of the injury is inherently undiscoverable and the injury itself is objectively verifiable. *Jackson v. W. Telemarketing Corp. Outbound,* 245 F.3d 518, 523–24 (5th Cir.2001) (quoting *Salinas v. Gary Pools, Inc.,* 31 S.W.3d 333, 335 (Tex.App.-San Antonio 2000, no pet.)).

Here, Defendants argue that the discovery rule is inapplicable to NTOF's tortious interference claim because it does not apply to NTOF's breach of contract claim. *See* Doc. 4 at 22. However, NTOF could not have known of its tortious interference claims until it learned of the wrongful acts causing injury. *See Jackson,* 245 F.3d at 523. Taking the allegations in the complaint as true, NTOF did not know that Larry Oney and Pratt had a personal interest until the IRS informed NTOF of the PRG Contract in February 2011. Doc. 8 at 22–23. Therefore, NTOF argues that the discovery rule tolls the statute of limitations until February 2011. *Id.; Cf.* Doc. 16 (Defendants' reply, failing to address NTOF's tortious interference arguments). Because NTOF filed suit in February 2012, NTOF's claims appear to satisfy the statute of limitations.

▮ Additionally, while a corporation's agents are often not subject to liability for interfering with the corporation's contracts, Larry Oney and Pratt may be liable for interfering with H & G's contracts if they were furthering their personal interests. *See Holloway,* 898 S.W.2d at 795–96. Here, NTOF claims, "Larry Oney and Pratt diverted money that rightfully belonged to H & G and its shareholders to a competing business for their own personal benefit and that they prevented H & G

from providing audited financial statements to NTOF in order to cover up their theft." Doc. 8 at 23. Defendants have not disputed this. *See* Doc. 16; *see also* Doc 4 at 23. Thus, the allegations support a plausible claim for relief. NTOF's tortious interference claims survive dismissal.

### v. Breach of Fiduciary Duty

▮ Defendants also challenge NTOF's breach of fiduciary duty claims against H & G, Larry Oney, and Pratt. Doc. 4 at 23. "The elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship between the plaintiff and defendant exists; (2) a breach by the defendant of his fiduciary duty; and (3) an injury to the plaintiff or a benefit to the defendant from the breach." *Mandel v. Thrasher (In re Mandel),* 578 Fed.Appx. 376, 388 (5th Cir.2014) (citing *Lundy v. Masson,* 260 S.W.3d 482, 501 (Tex.App.-Houston [14th Dist.] 2008, pet. denied).)

▮ First, Defendants correctly note that NTOF fiduciary duty claims against Larry Oney and Pratt cannot be based on the formal fiduciary duties they owe to H & G. *See* Doc. 4 at 23–24; *see also Ritchie v. Rupe,* 443 S.W.3d 856, 892 (Tex.2014) (declining to "impos[e] on directors and officers a [formal] fiduciary duty to individual shareholders"). Under the Texas Supreme Court's holding in *Ritchie,* where "controlling shareholders or directors of a closely held corporation seek to artificially deflate the shares' value, perhaps to allow the company or its shareholders to purchase a minority shareholder's shares for less than their true market value, . . . claims based on such conduct belong to the corporation, rather than the individual shareholder." 443 S.W.3d at 887. While the Court acknowledged that its holding "leaves a 'gap' in the protection that the law affords to individual minority shareholders," it also noted that other remedies

are available where "the controlling directors or shareholders act fraudulently to manipulate the shares' value." *Id.* at 888 n. 56, 889.

Here, NTOF has not filed a derivative action on H & G's behalf. As such, NTOF cannot sue Larry Oney and Pratt to enforce the fiduciary duty they owed to H & G. Moreover, the complaint fails to allege that Defendants owed a formal fiduciary duty to NTOF. NTOF's fiduciary duty claims must be based on a less formal fiduciary duty.

■ Outside of the formal fiduciary relationship between corporations and their directors, the Texas Supreme Court has "recognized that in some circumstances a special relationship of trust may arise between parties prior to and independent from the parties' business relationship, which can give rise to informal fiduciary duties." *Ritchie,* 443 S.W.3d at 889 n. 58. Such an "informal fiduciary duty may arise from 'a moral, social, domestic or purely personal relationship of trust and confidence,' and its existence is generally a question of fact for the jury." *Id.* at 892 n. 63.

Here, NTOF's complaint does not allege that NTOF interacted with any of the Defendants prior to or independent from the parties' business relationship. *See* Doc. 1–6. Instead, the complaint states that NTOF's first interactions with Larry Oney, Pratt, and H & G were related to the potential investment in H & G. *See* Doc. 1–6 at 3. Nothing in the complaint suggests that NTOF had any sort of relationship with Defendants outside of this business relationship. Therefore, the complaint fails to allege that a special relationship of trust gave rise to informal fiduciary duties between NTOF and any of the Defendants. Absent such a relationship, NTOF has failed to allege a plausible breach of fiduciary duty claim.

Moreover, NTOF's argument that H & G's articles of incorporation create a fiduciary duty is unavailing. *See* Doc. 8 at 25. The relevant section of H & G's articles of incorporation states that it "does not eliminate or limit the liability of a director to the extent the director is found liable." Doc. 11–2 at 4. While a fiduciary duty may be created by contract, *Ritchie,* 443 S.W.3d at 888–98, H & G's articles of incorporation do not purport to create fiduciary duties or liabilities. *See* Doc. 11–2 at 4. They merely refrain from limiting any existing liability. *Id.*

In sum, NTOF's complaint fails to allege a breach of fiduciary duty claim against Defendants H & G, Larry Oney, or Pratt. Therefore, NTOF's breach of fiduciary duty claims are dismissed.

### vi. Conversion, Money Had and Received, and Texas Theft Liability Act

■ Next, Defendants seek to dismiss NTOF's conversion, money had and received, and Texas Theft Liability Act claims. The complaint asserts these causes of action against Defendants H & G, Pratt, and Larry Oney for depriving NTOF of its right as a shareholder to possess a portion of the true profits H & G earned. *See* Doc. 1–6 at 22–24.

First, Defendants challenge NTOF's conversion claim by arguing the claimed profits cannot be converted as a matter of law and NTOF has no present interest in those profits. *See* Doc. 4 at 25. In response, NTOF states that the contested profits are subject to conversion because the money at issue is specifically identifiable. Doc. 8 at 26 (citing *Sw. Indus. Inv. Co., Inc. v. Berkeley House Investors,* 695 S.W.2d 615, 617 (Tex.App.-Dallas 1985, writ ref'd n.r.e.) ("An action will lie for conversion of money when identification of the money is possible and there is a breach

of an obligation to deliver the specific money in question or to otherwise treat specific money.")). NTOF also contends that it does not need to allege a present possessory interest in the profits because NTOF's rights were violated at the time it sold back the stock. Doc. 8 at 26. Defendants' reply fails to address NTOF's arguments or explain why the sought profits are not identifiable. *See* Doc. 16 at 11. Based on the briefing, Defendants have not shown that NTOF failed to state a plausible claim for relief. Thus, Defendants are not entitled to dismissal of the conversion claim.

■ Next, Defendants argue that NTOF has failed to allege sufficient facts of fraud or inequitable conduct to support a money had and received claim. Doc. 4 at 25. Because the Court has found sufficient allegations of fraud, Defendants' contention does not defeat NTOF's money had and received claim. Additionally, while it is true that, "[g]enerally speaking, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory" such as money had and received, *see Prime Income Asset Mgmt. v. One Dallas Centre Assocs. LP,* 358 Fed. Appx. 569, 572 (5th Cir.2009), Defendants have failed to explain how the redemption agreement covers the subject matter of NTOF's money had and received claim. *See* Doc. 4 at 25. Accordingly, NTOF's claim survives dismissal.

Finally, Defendants argue that NTOF has not addressed all of the elements of a Texas Theft Liability Act claim because the complaint fails to allege that Defendants used unlawful conduct to appropriate the profits. Doc. 4 at 26. However, NTOF has sufficiently alleged fraud. Therefore, Defendants' argument fails to defeat NTOF's claim.

### vii. Vicarious Liability

■ Next, Defendants seek to dismiss NTOF's theories of vicarious liability on grounds that the underlying claims should be dismissed. Doc. 4 at 27; 6 at 25. Because some of NTOF's claims survive dismissal, this argument is inapplicable.

Defendants also claim that NTOF has failed to allege the existence of a conspiracy because the complaint does not state that Defendants had a meeting of the minds or undertook an unlawful, overt act to further the conspiracy. Doc. 4 at 27–28. The Court disagrees. NTOF's complaint alleges that Defendants had a meeting of the minds after a telephonic Board meeting on September 1, 2006 where Larry Oney, Christopher Oney, and Pratt all took an overt action on behalf of H & G, HGI, and PRG by executing the PRG Contract in order to defraud NTOF. Doc. 1–6 at 7–8. These allegations satisfy NTOF's pleading requirements.

■ As to Defendants' contention that Larry Oney and Pratt cannot be conspirators because they are agents of H & G, "[a]lthough agents of a corporation cannot form a conspiracy while acting in their corporate capacity, agents can conspire with each other if they are acting in a different capacity or for a personal purpose of their own." *Tex.-Ohio Gas, Inc. v. Mecom,* 28 S.W.3d 129, 138 (Tex.App.-Texarkana 2000, no pet.). In this case, NTOF has alleged that Defendants were acting for their own benefit. *Cf.* Doc. 15; 16 (failing to respond to NTOF's argument on this point). Thus, NTOF's conspiracy claims survive.

Finally, NTOF does not allege that Defendants are liable for aiding and abetting as an independent cause of action. *See* Doc. 8 at 29. The complaint's aiding and abetting language merely asserts that Defendants are each liable for the underlying causes of action.

### viii. Exemplary Damages and Attorney's Fees

Lastly, because NTOF's complaint has sufficiently alleged multiple causes of action, NTOF's requests for the exemplary damages and attorneys' fees survive Defendants' objections.

### III. Conclusion

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendants' Motions to Dismiss. NTOF's breach of fiduciary duty claims are dismissed. NTOF's other claims remain.

**IT IS SO ORDERED.**